IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| COLETON PATTERSON,<br><br>      Plaintiff/Counter-defendant,<br><br>vs.<br><br>ALLIED PROPERTY AND<br>CASUALTY INSURANCE,<br><br>      Defendant/Counterclaimant,<br><br>and<br><br>JEREMY HUFF, and ELIZABETH HUFF,<br><br>      Defendants. | Case No. 3:13-cv-630-JPG-PMF |

## MEMORANDUM AND ORDER

This matter comes before the Court on the cross-motions for summary judgment filed by defendant/counterclaimant Allied Property and Casualty Insurance Company ("Allied") (Doc. 19) and plaintiff/counter-defendant Coleton Patterson (Doc. 24). The parties have responded to the respective motions (Docs. 26 & 27).

**I.    Legal Standards**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). With respect to their cross-motions for summary judgment, Patterson and Allied agree as to the relevant facts, so the Court must decide whether either party is entitled to judgment as a matter of law. Both parties further appear to agree that Illinois law is the appropriate law in this case or, at least, that it will yield the same result as Missouri law, which could arguably apply.

This case involves the interpretation of an insurance policy. Under Illinois law, the interpretation of an insurance policy, even an ambiguous policy, is a question of law. *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993). In interpreting a policy, the Court must attempt to effectuate the parties' intention as expressed by the policy, giving "due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract." *River*, 160 F.3d at 1169 (quotations omitted); *accord Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997); *Crum & Forster*, 620 N.E.2d at 1078. If the policy is unambiguous, the Court must construe it according to the plain and ordinary meaning of its terms. *River*, 160 F.3d at 1169; *Allen*, 128 F.3d at 466; *Crum & Forster*, 620 N.E.2d at 1078. On the other hand, if the policy is ambiguous, the Court must construe all ambiguities in favor of the insured and against the insurer, who drafted the policy. *River*, 160 F.3d at 1169; *Allen*, 128 F.3d at 466; *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992). To determine if an ambiguity exists, the Court must ask whether the policy, taken as a whole and reading all parts in light of the other parts, is susceptible to more than one reasonable interpretation. *River*, 160 F.3d at 1169; *Allen*, 128 F.3d at 466; *Outboard Marine*, 607 N.E.2d at 1212. The parties' mere disagreement about the interpretation of a policy does not render it ambiguous. *River*, 160 F.3d at 1169. Missouri law is not substantially different. *See Rodriguez v. General Acc. Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. 1991).

## II.    Facts

Allied issued automobile insurance policy number PPCM0019946712-3 ("Policy") to defendants Jeremy and Elizabeth Huff. The Policy was issued in Missouri and covered four vehicles. During the term of the Policy, Patterson was riding as a passenger in one of the cars covered by the Policy when it was hit by another car driven by Ryan Wachter, who is not a party

to this case. Patterson was injured, and Wachter's insurer paid Patterson $50,000 for bodily injury under Wachter's liability insurance policy. Patterson now seeks coverage under the Policy's underinsured motorists ("UIM") endorsement.

The UIM endorsement includes the following:

**INSURING AGREEMENT**
A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":
1. Sustained by an "insured"; and
2. Caused by an accident.
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

\* \* \*

C. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

\* \* \*

**LIMIT OF LIABILITY**
A. The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:
1. "Insureds";
2. Claims made;
3. Vehicles shown in the Declarations; or
4. Vehicles involved in the accident. A vehicle and attached "trailer" are considered one vehicle. Therefore, the Limit of Liability will not be increased for an accident involving a vehicle which has an attached "trailer."

UIM Endorsement at 1-2.

3

The relevant portions of the Policy's declarations page are displaced in Figure 1 with the most salient portions circled. The UIM coverage is described as "(PER POLICY)" and sets forth a single coverage figure of $50,000 for each person. The UIM premium is listed as a single premium amount and is not included in the "total premium" amounts for each vehicle.

| VEH | BODILY INJURY | | PROPERTY DAMAGE | MEDICAL PAYMENTS | PERSONAL INJURY PROTECTION | | UNINSURED MOTORISTS (PER POLICY) BODILY INJURY | | | UNDERINS. MOTRST (PER POLICY) | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | EACH PERSON | EACH ACCIDENT | EACH ACCIDENT | EACH PERSON | OPTION | | EACH PERSON | EACH ACCIDENT | | EACH PERSON | EACH ACCIDENT |
| 1 | 50,000 | 100,000 | 50,000 | 1,000 | | | 50,000 | 100,000 | | 50,000 | 100,000 |
| 3 | 50,000 | 100,000 | 50,000 | 1,000 | | | | | | | |
| 7 | 50,000 | 100,000 | 50,000 | 1,000 | | | | | | | |
| 8 | 50,000 | 100,000 | 50,000 | 1,000 | | | | | | | |
| VEH | DAMAGE TO YOUR VEHICLE | | | ROADSIDE ASSISTANCE | RENT RE TRN EXP | | | | | | |
| | Other Than Collision Loss | Collision Loss | | | | | | | | | |
| | Actual Cash Value Minus Deductible | | | BY POLICY | PER DAY/ MAXIMUM | ACPEE COVRGE | | | | | |
| 1 | | | | | | | | | | | |
| 3 | | | | | | | | | | | |
| 7 | | | | | | | | | | | |
| 8 | 500 | 500 | | | 25/ 800 | | | | | | |

PREMIUMS (In Dollars)

| VEH | BODILY INJURY | PROPERTY DAMAGE | MEDICAL PAYMENTS | PERSONAL INJURY PROTECTION | UNINSURED MOTORISTS | | UNDERINS. MOTORISTS | DAMAGE TO YOUR VEHICLE | | ROADSIDE ASSISTANCE BY POLICY | RENT RE TRN EXP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Other Than Collision Loss | Collision Loss | | |
| 1 | 134.43 | 119.34 | 22.62 | | 53.28 | | 14.20 | | | | |
| 3 | 129.03 | 104.39 | 18.14 | | | | | | | | |
| 7 | 125.11 | 102.97 | 22.62 | | | | | | | | |
| 8 | 162.72 | 131.00 | 23.14 | | | | | 128.88 | 258.22 | | 27.10 |
| VEH | ACPEE COVRGE | | | | | | | | | | |
| 1 | | | | | | | | | | | |
| 3 | | | | | | | | | | | |
| 7 | | | | | | | | | | | |
| 8 | | | | | | | | | | | |

| VEH | Total Premium Each Vehicle | Other Miscellaneous Endorsements Requiring Premium: | | Sub-Total | $ | 1,577.19 |
|---|---|---|---|---|---|---|
| | | | | Other Endorsements/Fees | $ | |
| 1 | 276.39 | No. | $ | | $ | |
| 3 | 251.56 | | $ | Full Term Premium | $ | 1,577.19 |
| 7 | 250.70 | | $ | Add'l Premium | $ | |
| 8 | 731.06 | | $ | Return Premium | $ | |

THIS IS NOT A BILL - SEE YOUR BILLING STATEMENT

Figure 1.

The declarations page is similar, but not identical to, a document used by the Huffs' insurance agent to illustrate coverages and premiums. That document, the relevant parts of which are displayed in Figure 2, again with the most salient portions circled, states that it is for illustrative purposes only and that the Policy and its declarations page should be consulted to

4

determine coverage.

Figure 2.

Patterson believes that the Policy entitles him to UIM coverage in the amount of $200,000 whether Illinois or Missouri law applies. Under Illinois law, he believes that the $50,000 bodily injury liability coverage available to each of the four covered vehicles should be "stacked" to reach $200,000 of bodily injury liability coverage, and that Illinois law requires vehicle insurance policies issued in Illinois to provide UIM coverage in an amount at least equal to the bodily injury liability coverage available. If the Policy provides $200,000 in UIM coverage, more than the bodily injury liability limit of Wachter's policy ($50,000), the Policy's underinsured motorists coverage would apply. Under Missouri law, Patterson argues that the UIM endorsement is ambiguous and should be construed in his favor to provide excess coverage over and above the bodily injury coverage provided by Wachter's policy.

Allied argues that the Illinois statutory requirements regarding UIM coverage apply only

5

to insurance policies issued in Illinois, which the Policy was not. It further argues that the Policy is clear that there is only one UIM coverage amount ($50,000) and that, because that amount was not less than the limits of Wachter's policy, Wachter was not an underinsured motorist and the Policy's UIM coverage does not apply. Finally, it argues that the UIM endorsement is not ambiguous under Missouri law and clearly does not apply to Patterson's case.

In May 2013, Patterson filed suit in the Circuit Court of Jefferson County, Illinois, seeking a declaration that the UIM coverage is in the amount of $200,000 and cannot be offset by the $50,000 paid by Wachter's policy. Allied removed the case based on diversity jurisdiction and filed a counterclaim seeking a declaration that Wachter was not an underinsured motorist under the Policy and thus it has no obligation to pay under the UIM endorsement.

**III.     Analysis**

   A.     Under Illinois Law

Patterson's theory under Illinois law relies on a line of Illinois cases allowing coverage for multiple vehicles in a single policy to be "stacked" – that is, added together to provide coverage in the sum total of all the listed coverages. Illinois courts reason that where liability limits figures are listed separately for each vehicle covered by a multi-vehicle policy, a reasonable person could interpret that to mean the total of the liability limits listed is available for an accident involving a single covered vehicle. Where a reasonable person could believe coverage existed in that total amount, an ambiguity exists and the policy will be interpreted in favor of the insured. *See Pekin Ins. Co. v. Estate of Goben*, 707 N.E.2d 1259, 1265-66 (Ill. App. Ct. 1999) (stacking allowed despite anti-stacking provision where UIM limit listed once for each vehicle); *compare Hobbs v. Hartford Ins. Co. of the M.W.*, 823 N.E.2d 561, 566 (Ill. 2005) (no stacking where UIM limit noted only once on declarations page and policy contained express anti-stacking provision); *Bruder v. Country Mut. Ins. Co.*, 620 N.E.2d 355, 362-63 (Ill. 1993) (no

stacking where per person uninsured motorist limit noted only once on declarations page and policy contained express anti-stacking provision; would have been ambiguous if separate coverage figures listed for each vehicle).

The Policy in this case is not ambiguous such that it would allow stacking of UIM coverage. In fact, it is remarkably similar to the policy found to be unambiguous in *Hobbs*. The Policy contains an anti-stacking provision:

> The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages . . . arising out of "bodily injury" sustained by any one person in any one accident. . . . This is the most we will pay regardless of the number of . . . [v]ehicles shown in the Declarations. . . .

UIM Endorsement at 2. Additionally, as in *Hobbs*, the declarations page lists a *single* limit of UIM liability. It also lists one separate premium for the entire coverage, not a separate premium for each vehicle. Furthermore, the declarations page specifies that the single UIM limit applies "(PER POLICY)," not per vehicle. There is no way the Policy, read as a whole, could be construed as allowing any stacking of UIM coverage where only one limit is stated as to the policy coverage, one premium is given and stacking is expressly prohibited.

Patterson first argues that use of parentheses in the "(PER POLICY)" UIM limits heading means it is not important and essentially should be ignored. This is not a reasonable interpretation of the use of parentheses. While it is debatable why Allied placed the information in parentheses, it is not reasonable to interpret the use of parentheses to mean the parenthetical information is meaningless.

Patterson also argues that the insurance agent's form used for illustrative purposes creates an ambiguity in the Policy. However, the Court cannot consult the insurance agent's document to determine what the Policy means. When a contract is unambiguous, as the Policy is, the Court must confine itself to the "four corners" of the contract and cannot consider extrinsic evidence,

7

such as documents used in the negotiation of the contract, to create an ambiguity. *See Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999).

Even if the Court were to consider the insurance agent's document, the result would be the same. Patterson argues that the insurance agent's document creates an ambiguity because it states the UIM limit on the line corresponding to the first insured vehicle and then on subsequent lines for the three other insured vehicles states "INCL." While the Court is not sure what this means, it is irrelevant because the insurance agent's document does not determine the limits of liability. The declarations page does: "The limit of liability *shown in the Declarations* for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages . . . ." UIM Endorsement at 2 (emphasis added). Furthermore, the insurance agent's document itself cautions that it is only for illustrative purposes and that the declarations page determines actual coverage. For these reasons, the insurance agent's document simply does not create any ambiguity in the Policy.

Perhaps realizing the dim prospects for a direct stacking argument, Patterson advances a three-step argument relying a kind of transitive property: (1) the bodily injury liability limits can be stacked to provide $200,000 of coverage, (2) uninsured motorists insurance liability limits must be at least equal to the bodily injury liability limits, and (3) UIM insurance liability limits must, in some cases, be at least equal to the uninsured motorists coverage. Steps 2 and 3 flow from an Illinois statute, 215 ILCS 5/143a-2(1) and (4). That statute, however, applies only to insurance policies "renewed or delivered or issued for delivery" in Illinois for vehicles required to be registered in Illinois. 215 ILCS 5/143a-2(1) (uninsured motorists insurance); *see also* 215 ILCS 5/143a-2(4) (UIM insurance). The Policy was not issued in Illinois, and the vehicle insured by Allied was not registered in Illinois. Thus, even if step 1 of Patterson's argument had some merit, he would fail on steps 2 and 3.

8

For these reasons, the Court finds that the Policy provides UIM coverage in the total amount of $50,000. Because this is the same as the limit for bodily injury under Wachter's insurance policy, Wachter's vehicle was not an "underinsured motor vehicle," and the Policy's UIM coverage does not apply.

B.    Under Missouri Law

Patterson concedes that under Missouri law, the UIM coverage in the Policy cannot be stacked in the traditional way. *See Becker v. Allied Prop. & Cas. Ins. Co.*, 422 S.W.3d 434 (Mo. Ct. App. 2013), *transfer denied*, No. SC94037, 2014 Mo. LEXIS 78 (Mo. Mar. 25, 2014). Instead, he argues, the UIM coverage must be treated as excess insurance over the amounts paid by Wachter's insurer. He rests this argument on *Miller v. Ho Kun Yun*, 400 S.W.3d 779 (Mo. Ct. App. 2013).

*Miller* involved a set of facts similar to the case at bar: a tortfeasor's insurer paid the limits of its bodily injury coverage, and the injured party sought additional coverage under the UIM coverage of the vehicle owner's policy, which provided coverage in the identical amount to the tortfeasor's bodily injury coverage. *Id.* at 781. The *Miller* court considered a UIM endorsement similar, but not identical, to the UIM endorsement in the case at bar and found it ambiguous. *Id.* at 781-82. The ambiguity, however, was not because of the language defining an "underinsured motor vehicle" itself, which the court found clear and unambiguous. *Id.* at 785 (citing *Rodriguez v. General Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382-83 (Mo. 1991)). Instead, the ambiguity was based on the fact that the phrase "underinsured motor vehicle" was not printed in bold in the description of the UIM coverage such that it would have alerted the insured that the phrase had a special, defined meaning, as opposed to the average reader's understanding that an underinsured motor vehicle is simply not insured for the entire extent of the damage it caused. *Id.* at 792-93. The *Miller* court found that, in light of the non-specialized

meaning of "underinsured motor vehicle," the statement that the insurer will pay under the UIM coverage only after payments have been made under any bodily injury liability policies could be interpreted as promising excess insurance coverage under the UIM endorsement, that is, over and above the other bodily injury liability policies. *Id.*

*Miller* is easily distinguishable from the case at bar. Here, the phrase "underinsured motor vehicle" is set off from the rest of the text describing the UIM coverage by quotation marks. This special treatment gives the insured fair notice that it is a specially defined phrase. *See* Policy at 2 ("Other words and phrases are defined. They are in quotation marks when used."). Thus, the average reader would not think an "underinsured motor vehicle" is anything other than how the UIM endorsement defines it – a vehicle carrying less bodily injury liability coverage than the insured's UIM coverage. Since that definition clearly does not apply to Wachter's vehicle, no reasonable person could understand the UIM endorsement to apply to Patterson, and no reasonable person would be confused by any limitations to that coverage in this situation. The UIM endorsement simply was not ambiguous as to whether it applied in Patterson's case.

  C. <u>Other Arguments</u>

Patterson does not address other reasons offered by Allied as to why the underinsured motorists coverage was not triggered. The Court construes this omission either as a waiver or as an admission of the merits of those arguments. *See* Local Rule 7.1(c).

**IV.** **Conclusion**

For the foregoing reasons, the Court finds Wachter's vehicle was not an "underinsured motor vehicle" and that, as a consequence, the UIM endorsement does not provide coverage for Patterson based on the accident at issue in this case. Accordingly, the Court:

- **GRANTS** Allied's motion for summary judgment (Doc. 19);

- **DENIES** Patterson's motion for summary judgment (Doc. 24); and

- **DIRECTS** the Clerk of Court to enter judgment on the claims and counterclaims in this case accordingly and declaring:

    o The vehicle operated by Ryan Wachter during the collision of July 18, 2011, is not an "underinsured motor vehicle" as that phrase is defined in automobile insurance policy number PPCM0019946712-3, issued by defendant/counterclaimant Allied Property and Casualty Insurance Company; and

    o Defendant/counterclaimant Allied Property and Casualty Insurance Company has no obligation to pay plaintiff/counter-defendant Coleton Patterson under the underinsured motorists endorsement of automobile insurance policy number PPCM0019946712-3, issued by defendant/counterclaimant Allied Property and Casualty Insurance Company, for damages sustained in the collision of July 18, 2011.

**IT IS SO ORDERED.**
**DATED: July 25, 2014**

                                                          s/J. Phil Gilbert
                                                          **J. PHIL GILBERT**
                                                          **DISTRICT JUDGE**